UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO. 9:12-CR-80039-4-WILLIAMS**
[ASSOCIATED FLSD CASE NO. 9:11-CR-80191-1]

UNITED STATES OF AMERICA,
               Plaintiff,

v.

JEFFREY T. FIELDS,
               Defendant.

_____/

FILED BY____PCS____ D.C.

MAY 0 8 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## MOTION TO TERMINATE DEFENDANT'S SUPERVISED RELEASE TERM

**NOW COMES JEFFREY T. FIELDS,** appearing *pro se*, and respectfully motions the Court to terminate the imposed term of supervised release pursuant to 18 U.S.C. §3583(e)(1) and Fed R. Crim. P. 32.1(c)(2)(C). No hearing is sought in this matter per Fed R. Crim. P. 32.1(c)(2)(B).

### Procedural History

In 2010, my addiction to Opioid pills was raging, and I made money to support my lifestyle by taking advantage of people. My involvement with timeshare sales and advertising, including illegal and deceptive sales methods, resulted in an investigation and indictment in the enumerated cases in the caption above.

On July 20, 2012 I was sentenced to 101 months in prison in both of the above-enumerated cases, both run concurrent to each other. Doc. 144.[1] I was sentenced to 5 years of supervised release after my release from Bureau of Prisons (BOP) custody, with

---

1 PACER docket entry references herein will only reference the 2012 case docket for simplicity and to avoid conflicting citations.

- 1 -

a $100 special assessment in each case and a restitution judgment of $2,212,660.09 to be made jointly and severally with my 2012-case co-defendants.

This sentenced was reduced by 1/3rd due to a government move for such a reduction, as a result of my assistance in their investigation and prosecution of these, and related, cases. Even though I was facing the consequences of my actions, I was still battling my addiction, and tested positive in a pretrial drug test for opiates.

While in the BOP, I took and completed the RDAP program successfully and had no addiction or conduct problems for the entirety of my sentence.

I was released from custody of the BOP to the jurisdiction of the United States Probation Office here on February 19, 2019. I have now completed 15 months of supervision and am petitioning this Court for early termination for the following reasons:

- My conduct since release warrants early termination in general;
- I completed RDAP and the TDAP community aftercare programs, and have overcome my addiction to opiates;
- I am on minimal levels of supervision due to my low-risk nature of reoffending or endangering the public again;
- The interests of justice are served by, among other reasons, protecting myself and my probation officer from unnecessary extra contact with each other in this time of COVID-19 social distancing.

## Jurisdiction

This Court had and maintains jurisdiction of this case from pretrial, and now during my supervision phase.

## Authority

This Court is granted the authority to terminate a term of supervised release by 18 U.S.C. §3583(e)(1) which, after considering specific sentencing factors from §3553(a), allows a

- 2 -

district court judge to "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure … if it is satisfied that such action is warranted by the conduct of the defendant released and in the interests of justice."

Paraphrased, the §3553(a) factors that are to be considered for an early termination request are:

§§(a)(1): The nature and circumstances of the offense;

§§(a)(2)(B): To afford deterrence to criminal conduct;

§§(a)(2)(C): To protect the public from future crimes;

§§(a)(2)(D): To provide education and job training, provide medical care or other correctional treatment;

§§(a)(4): The kinds of sentences available in the guidelines;

§§(a)(5): In line with relevant policy;

§§(a)(6): Avoiding unwarranted differences in sentence between similar defendants with similar conduct;

§§(a)(7): To provide restitution to any victims.

The applicable Federal Rule of Criminal Procedure is 32.1(c), which allows for modifications of supervised release. This rule requires a hearing unless the relief sought is favorable to the defendant and that an Assistant United States Attorney has received notice of the relief sought and is given reasonable opportunity to object (Fed R. Crim P (2)(B) & (C)).

Committee notes to this procedural rule don't spend much time on termination requests, but bring up a defendant's right to present mitigating information when a modification request would be of greater restriction to the defendant. In this case, I both waive the hearing, and request that a decision in this matter be made without such a hearing once the government is given an opportunity to proffer a written objection if it

- 3 -

chooses to do so.

## Controlling Precedent

18 U.S.C. §3583(e)(1) permits a district court to "terminate a term of supervised release and discharge the defendant" if, "after considering the factors set forth in" 18 U.S.C. §3553(a), the court "is satisfied that such action is warranted by the conduct of the defendant released and in the interest of justice." *United States v. Keshishian,* 12-10680 (11th Cir. 2013).

The 11th Circuit dictated the way District Courts are required to ponder §3583(e) requests in *United States v. Johnson,* 17-12577 (11th Cir. 2017). Where, in previous unpublished cases like *United States v. Boyd*, 606 F. App'x 953 (11th Cir. 2015),[2] there was no requirement from the Circuit Court that a district judge explain the §3553(a) factors considered while pondering a termination request, the *Johnson* decision made clear that §3583(e) requests were analogous enough to §3582(c) requests, insofar as they are sentencing reduction decisions, that meaningful appellate review requires *some* discussion of the relevant statutory consideration factors.

The purposes of supervised release are different from those of incarceration. Nowhere is this more plain than when observing the omission of §3553(a)(2)(A) from the cross-referenced sentencing factors in §3583(e). "The Supreme Court has described supervised release as 'the decompression stage' between prison and full release." *United States v. Kappes,* 782 F.3d 828 (7th Cir. 2015) (Quoting *Johnson v. United States,* 529 U.S. 694, 709 (2000)). So, if the purposes of decompression, deterrence, and other setnencing factors are satisfied, then supervised release has run it's full course and should be terminated.

---

2 See *Johnson, id.* at 7

**Policy**

The relevant section of the Sentencing Guidelines Manual can be found in §5D1.2. The policy here made a sharp change in 2011 when the amendments to the manual that year specifically changed this section to encourage early termination in appropriate cases, rather than in cases which show "unforeseen circumstances" or "exceptional behavior".

These two phrases are used a lot to dissuade district courts from granting early termination requests where defendants have demonstrated no further need for supervision. They come from an opinion from the Second Circuit in United States v. Lussier, 104 F.3d 32 (2nd Cir. 1997), and since the 2011 changes to the guidelines manual, policy has shifted away from this arbitrary and high bar.

"The guidelines encourage … [courts] to exercise this authority in appropriate cases, particularly noting that a court may impose a longer term of supervised release on a defendant with a drug, alcohol or other addiction, but may then terminate the supervised release term early when a defendant successfully completes a treatment program, thereby reducing the risk to the public from further crimes of the defendant."1 U.S.S.G. §5D1.2 cmt. n. 5 (Internal quotations omitted).

Judiciary policy in regards to recommending early termination in supervised release cases comes from Monograph 109. In tandem with the Sentencing Guidelines Manual notes in §5D1.2, Probation Monograph 109 informs probation officers that they "should consider the suitability of early termination for offenders as soon as they are statutorily eligible."

The nine criteria for making a recommendation to the court for early termination are found in section §380.10(b):

(1) Stable community reintegration;
(2) Progressive strides toward supervision objectives and in compliance with all conditions of supervision;
(3) No aggravated role in the offense of conviction, particularly large drug or fraud

- 5 -

offenses;

(4) No history of violence;

(5) No recent arrests or convictions;

(6) No recent evidence of alcohol or drug abuse;

(7) No recent psychiatric episodes;

(8) No identifiable risk to the safety of any identifiable victim; and,

(9) No identifiable risk to public safety based on the Risk Prediction Index."

Later in that same section it states that the existence of outstanding financial obligations per se does not adversely affect early termination eligibility (§§c), and there is a *presumption in favor of recommending early termination* for probationers and supervised releasees who have been supervised for at least 18 months and are not violent, drug, sex offenders, terrorists, present a risk to public or victims, and are free from any moderate or higher violations.

**Argument**

As mentioned above, one sentencing factor is specifically omitted by Congress in the cross-references contained in §3583(e)(1). That is, "the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."[3] This is reinforced by the clarity given by the Sentencing Commission in §5D1.2, citing rehabilitation completion as a valid reason for terminating a term of supervision early.

Because I have completed the goals of substance abuse rehabilitation, have maintained my contributions to restitution repayment, and reestablished myself thoroughly with my family and community, there is nothing left that could be accomplished by further supervision.

In the context of re-offense, the prognosis of my TDAP (community drug rehabilitation aftercare program) was the highest rating that program gives. There is never

---

3 §3553(a)(2)(A).

a "cured" status when dealing with addiction. Rather, remission and a comprehensive relapse prevention plan, mixed with one-day-at-a-time sobriety, create a mindset of remission.

Without an active addiction, and with the tools I've learned through these cognitive-behavioral treatment programs, I have much reduced risk to the community of criminality. Essentially, my criminality was an extension of my addiction. Without that addiction, the compulsion to criminality (to support that addiction) no longer exists. This is why RDAP is so successful, and why the Sentencing Commission pointed to this sort of rehabilitation when giving an example of an appropriate case for early termination. I have attached the Termination report from the TDAP aftercare program to this pleading, for emphasis.

Re-offense risk, in my case, is as mitigated as I could possibly make it, and satisfies both Sentencing Commission policy and §3553(a)(2)(B) & (C).

I have stability in my life and community. I have a great job in management in a marketing company called the Warton Group. I've held this employment since June of 2019, and before that I had worked for a freight brokerage company since my first week in halfway house custody.

I have a wonderful home life with a group of four kids. My oldest child, my 16-year-old daughter, is a champion weightlifter and an Olympic hopeful. She has been invited to Beijing and Argentina to compete with the U.S. World Team just in the past year. I would love to be able to travel with her to her training and competitions, and that would be made much easier were it not for the travel restrictions and necessity for judicial approval (for overseas travel).

My ex-wife and I co-parent our children very well, and are supportive of each other. My three other children are 14, 13, and 8-years-old and I am both grieving the time I lost with the, and grateful for the time I am able to devote to their lives now. They are a daily reminder of why my sobriety and freedom are so important, and not to be taken for

granted.

I do not have any vocational or therapeutic needs could be met by supervisory intervention. I do not have any medical or housing concerns that would make further supervision necessary either. See §3553(a)(2)(D).

Five years is the maximum term of supervised release available for most criminal convictions under §3553(b), and are only available to Class A/B felonies. I was given a substantial sentence reduction (for incarceration) at sentencing, but the 5-year term of supervised release persisted through that request. Where the 33% sentence reduction applied to my supervision term as well, my commensurate supervision term would have been 38-39 months, or just over three years.

As no mandatory minimum term of supervised release is stated in statute, and the guidance by the Sentencing Commission in cases like mine is to err on the side of longer terms of supervised release, opting for early termination later once the goals of rehabilitation are completed, this request falls within the acceptable ranges for making this request.[4] See U.S.S.G. 5D1.2(a)(2) and §3553(a)(4) & (5).

To stay in line with sentencing decisions in similar cases with similar defendants, §3553(a)(6) addresses the need to avoid unwarranted disparities between cases with such similarities. In regards to my request here, other cases where early termination requests have been granted are of particular applicable. See the cases of my co-defendants, *United States v. Folan*, No. 9:15-TP-80032-DMM-1 (from my 2011 case), and *United States v. Ford,* No.9:12-CR-80039-5 (in this case) where defendant Folan was terminated early 5 year term of supervision by Judge Middlebrooks in 2017, and where defendant Ford was very recently terminated from his three year sentence in this very Court.

Regarding §3553(a)(7), it is doubtful that I will be able to pay down my entire restitution balance before I reach the end of my supervised release term unless a major windfall happens, such as winning the lottery. I do not play the lottery, so this is highly unlikely. I will be paying monthly toward making my victims whole again for many more

---

4 Primer: Supervised Release; (2015) United States Sentencing Commission.

years, and that judgment will convert to a civil matter regardless of if this request is granted or not. Thus, the good faith I have shown in paying toward that end, in compliance with my judgment order and multiple times above-and-beyond that order, should be noted, and my outstanding restitution, at least in my case, should not be a defining reason to deny this request.

## CONCLUSION

I have addressed the underlying addiction I had when I committed my crimes through multiple years of treatment and sobriety. I have spent years now, both pretrial and since arriving in the community of South Florida in halfway house custody, with clear and law-abiding conduct.

I have not used any drugs since a dirty urinalysis test during my time on pretrial supervision, I have paid diligently toward my restitution since release, and have re-established myself fully within my family, and within the community. There are no needs left to be addressed on supervised release, and there is no interest of justice to be served by continuing it.

Because of these reasons, I respectfully request that this court terminate the remaining portion of my supervised release term.

Dated: May 6, 2020

JEFFREY C. FIELDS

Pro Se Defendant, Movant

- 9 -

CERTIFICATE OF SERVICE
FOR PRO SE DOCUMENTS

I, JEFFREY T. FIELDS, do hereby certify that I have served a true and correct copy of the following document,

**MOTION TO TERMINATE DEFENDANT'S SUPERVISED RELEASE TERM**

upon the court and the office of the United States Attorney:

**Adrienne Rabinowitz**
United States Attorney's Office
500 South Australian Avenue
Suite 400
West Palm Beach, FL 33401

**Clerk of the US District Court**
Southern District of Florida
West Palm Beach Division
701 Clematis St
Room 202
West Palm Beach, FL 33401

by placing it in a sealed, postage prepaid envelope by United States Postal Mail

on the ___6th___ day of ___MAY___, 2020.

JEFFREY T. FIELDS
*Pro Se* Movant

Case 9:11-cr-80191-CMA Document 29 Entered on FLSD Docket 05/08/2020 Page 11 of 11

Jeff Fields
745 54 742 ct North
West Palm bch FL 33412

FOREVER / USA
FOREVER / USA
FOREVER / USA
FOREVER / U

Clerk of the US District Court
Southern District Court of florida
West Palm Beach Division
701 Clematis St
Room 202
West Palm Beach, FL 33401

USMS INSPECTED
BY